UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Eastern Division                                   Case No. _____


| | |
|---|---|
| SOPHIA M. ALEXANDER, | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BAIN CAPITAL, LLC, | ) |
|     Defendant. | ) |

# Complaint and Demand for Jury Trial

## INTRODUCTION

Sophia Alexander brings claims for sex discrimination (pregnancy) and for retaliation and interference with protected rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and Mass. Gen. L. c. 151B, and for violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* Her claims arise out of acts of her former employer, Defendant Bain Capital, LLC, in demoting her after learning of her pregnancy, harassing her and treating her differently from her colleagues while she was pregnant, failing to restore her to her job upon the same terms and conditions, and then firing her after she returned from maternity leave.

## PARTIES

1.     Plaintiff Sophia M. Alexander ("Ms. Alexander") is an adult resident of the Commonwealth of Massachusetts, who resides at 870 North Main Street, Brockton, Plymouth County, Massachusetts 02301.

2.     Defendant Bain Capital, LLC is a Delaware corporation with a principal office located at 111 Huntington Avenue, Boston, Massachusetts 02199-7615.  The name of the

1

Registered Agent and Corporation Registered Office in the Commonwealth is

Corporation Service Company, 84 State Street, Boston, Massachusetts 02109, as such

designation appears in the records of the Secretary of the Commonwealth.


## JURISDICTION

3.    Plaintiff timely filed her claims with the Massachusetts Commission Against

Discrimination ("MCAD") and the Equal Employment Opportunity Commission

("EEOC").  Plaintiff removed her claims from the MCAD and received a right to sue

letter from the EEOC in order to file her claims in Federal Court.

4.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 based on federal

question over the claims raised under 42 U.S.C. § 2000e *et seq.* and 29 U.S.C. § 2601 *et

seq.,* and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the claims raised

under Mass. Gen. L. c. 151B.

## FACTUAL ALLEGATIONS

5.    Ms. Alexander was hired as Library Manager at Bain Capital, LLC's ("Bain") Boston

office in August 2004.  Bain is a private investment firm which, at the time Ms.

Alexander was hired, had over $16 billion in assets under management.

6.    Ms. Alexander has a Masters Degree in Library Science.  When she was hired, she had

10 years of experience as a librarian working in some of the most prestigious libraries,

including Harvard Law School, the U.S. Attorney's Office, and Bain & Company.

7.    As Library Manager at Bain, Ms. Alexander's responsibilities included managing the

library; working with all business units of the firm; managing a staff of two or more

research analysts; prioritizing different research services; evaluating and introducing new

market data products; managing vendor relations and cost controls; managing a budget; maintaining corporate and industry files; tracking and charting commodity prices; and managing subscriptions to trade publications.

8.   In June 2005, Ms. Alexander received her first Performance Review, from her supervisor, Kevin Whelan, which was very positive.  Of the 22 items of criteria upon which she was evaluated, eight were listed as "Strengths," 11 as "Expected Level" and only three were "Development Needed."  Mr. Whelan praised her "strong written communications skills," as well as her analytical skills, commitment, organizational skills, initiative, and technical skills.  He noted that because of her excellent technical skills and knowledge of its product, the computer-based research network LEXIS/NEXIS asked Ms. Alexander to be on its Advisory Board.  Mr. Whelan told her that the company was happy with her performance and that great strides had been made in the Library since she took over, and thanked her for her "hard work."  Mr. Whelan gave her nearly a full bonus based on her performance.

9.   Beginning in July 2005, Ms. Alexander had to leave work once a week to attend physical therapy appointments for an injury.  Ms. Alexander was not required to use leave under the Family and Medical Leave Act (FMLA) for these appointments or provide medical certification.

10.   In February 2006, Ms. Alexander learned that she was pregnant.  During the first three months of her pregnancy she was extremely nauseous and frequently had to run to the ladies' room.  In or around early March, she told Jessica McGillivray, one of the Research Analysts who reported to her, of her pregnancy after Ms. McGillivray heard her getting sick in the ladies' room.

3

11.  On March 3, 2006, Ms. Alexander informed Mr. Whelan that she was pregnant.

12.  On March 14, 2006, Mr. Whelan told Ms. Alexander that she was not performing "up to par" and that he was considering removing her from her position as Library Manager.

13.  Prior to March 14, 2006, Ms. Alexander had received no warnings that her performance was deficient or her job was in jeopardy.

14.  On March 28, 2006, Mr. Whelan removed Ms. Alexander from her position of Library Manager and demoted her to Research Analyst, telling her that her interpersonal skills were a problem.  Ms. Alexander asked Mr. Whelan if the demotion had anything to do with her being pregnant, to which he became defensive.  During the meeting Mr. Whelan told Ms. Alexander that she should go home and talk it over with her husband and that she would see that it was best for her, and that the company would be more "flexible" with her in her new role which she would need in her "situation."

15.  Some time in either March or April 2006, Ms. McGillivray, who had no children, told Ms. Alexander that she was jealous of her pregnancy, and that having a 21-year old step son was "not the same thing."

16.  On April 28, 2006, Ms. McGillivray was promoted to Library Manager.

17.  After Ms. Alexander informed the Company that she was pregnant, she was treated differently from other members of the Library staff and differently from how she had been treated before announcing her pregnancy.  For example, she was required to provide medical documentation for physical therapy appointments which she had not been asked to provide over the prior year; she was told she could not attend a conference although her request had previously been approved; and she was denied a tuition reimbursement request.

4

18.     On May 16, 2006, Ms. Alexander had a meeting with Kathy Rockey, of Human

        Resources, to discuss how she was being treated by her new boss, Ms. McGillivray, and

        to discuss her maternity leave.  In the meeting, Ms. Alexander told Ms. Rockey that she

        did not believe Ms. McGillivray was treating her fairly and that Ms. Alexander thought

        she was treating her this way because of her pregnancy.   Ms. Alexander was warned by

        Ms. Rockey that any legal action was "not a game [she] wanted to play with Bain."

19.     On June 29, 2006, in a meeting with Mr. Whelan and Ms. Rockey, Ms. Alexander was

        given her second annual Performance Review.  The standard evaluation form, which had

        been used in 2005, and was used for all other department employees, was not used.  The

        review is not signed and there is no indication who prepared it.  The review was harshly

        critical, highly subjective and starkly different from Ms. Alexander's positive

        performance review from a year before.  The 22 job criteria on which Ms. Alexander was

        reviewed the prior year, including the areas in which Ms. Alexander had been rated

        "Expected Level" or "Strengths" are missing, which allowed Bain to ignore the positive

        aspects of her performance.

20.     Throughout Ms. Alexander's tenure at Bain, she received consistently positive feedback

        from Vice Presidents and analysts on the high quality of her research and assistance.

21.     On August 8, 2006, Ms. Alexander had a meeting with Ms. Rockey in Human Resources

        who told her that she would be required to work a specific new schedule with new hours,

        with certain guidelines and restrictions, including the requirement that she take her lunch

        hour at a specific time.  She was also told that she could only make personal phone calls

        between 12:30 and 1:30 p.m.  Prior to this she had also been told she could not eat lunch

        at her desk.  No one else on the Library staff was required to work under the same

guidelines and restrictions.  She was also informed that the time she had taken for

physical therapy and other medical appointments beginning April 6, 2006 would be

counted as intermittent FMLA leave.

22.    On or about August 15, 2006, Ms. Alexander requested twelve weeks paid maternity

leave pursuant to the company's Family and Medical Leave policy.  The company denied

her request for 12 weeks and said she would only get eight weeks of paid maternity leave,

claiming she had used up part of her FMLA leave in attending medical appointments.

23.    On August 22, 2006, through her attorney, Ms. Alexander accused Bain of demoting her

and treating her differently from her colleagues because of her pregnancy.

24.    Ms. Alexander went on maternity leave on or about October 26, 2006 when her baby was

born.

25.    When Ms. Alexander returned from maternity leave on January 2, 2007, her desk had

been cleaned out and her phone was turned off.

26.    Upon her return from maternity leave, Ms. Alexander was informed that any medical

appointments she needed for herself or her baby would have to be made outside of work

hours because by taking maternity leave she no longer was eligible for sick time.  Ms.

Alexander asked if she could use leave under the Small Necessities Leave Act (SNLA)

(per company policy) or to be able to use her vacation time or take unpaid leave for

medical appointments.  Ms. Rockey denied her use of SNLA leave (claiming she had not

provided sufficient notice).  She told Ms. Alexander that to use her vacation time for

medical appointments she would need a medical certification and to provide advance

notice and then they would determine on an appointment-by-appointment basis whether

to grant her request.  No one else in the Library was subjected to these rules for the use of

their vacation time.  Upon information and belief, other employees were not subject to these rules for medical appointments.

27.     On January 16, 2007, Ms. Alexander filed a Charge of sex discrimination and retaliation at the MCAD and EEOC.

28.     On January 18, 2007, Ms. Alexander was called into a meeting with Mr. Whelan, Ms. McGillivray and Ms. Rockey who accused her of engaging in acts of "misconduct" and "insubordination."  The types of behavior that were claimed to be "misconduct" and "insubordinate" included walking away from her manager when she spoke to her; turning her back on her manager when she was speaking; standing in a colleague's office without speaking; and "grunting."  Ms. Alexander explained that the allegation that she walked away from her manager when she was speaking to her occurred when Ms. McGillivray attempted to ask her questions as she (Ms. Alexander) was running out the door to catch her train.  She explained the incident of turning her back on her manager when her manager was speaking occurred when she was putting her handbag into a cabinet.  She explained that the time she was standing in a colleague's office without speaking happened on an occasion when she was re-shelving books.   Mr. Whelan told her that she would be given a final warning and that they would come up with a plan to improve her performance.

29.     On January 23, 2007, Ms. Rockey gave Ms. Alexander a "Final Warning" for engaging in "repeated acts of insubordination and otherwise unprofessional conduct" based on the same conduct that was told to her in the meeting on January 18, 2007.

30. Also on or about January 23, 2007, Ms. Alexander learned that Bain had hired a new Research Analyst, the same job Ms. Alexander held, who would start work in mid-February.  In February, Ms. Alexander was asked to help train the new Research Analyst.

31. On January 25, 2007, Ms. Alexander was placed on a Performance Improvement Plan, which was to include bi-weekly meetings with her supervisor for three months, at which point if she did not improve she would be terminated.

32. On March 1, 2007, Ms. Alexander was brought into a meeting with Mr. Whelan, Ms. McGillivray and Ms. Rockey, and told that she was not improving and that this would be the "final" meeting.  On March 6, 2007, Ms. Alexander delivered a written response to the final notice responding to each of the alleged performance deficiencies made against her and complaining that Bain had not held the bi-weekly meetings as promised; was not considering any evidence of how she was meeting her goals.  She stated that she believed the true goal of the PIP may have been to have her train her successor rather than help her improve her performance.

33. Even though the PIP was not due to expire until April 25, 2007, Ms. Alexander was terminated on March 7, 2007.  Bain claimed that her written response to the final notice was an act of insubordination because, by disagreeing with her supervisor, she was calling her supervisor a liar.

## COUNT I

### Sex Discrimination

34. Ms. Alexander repeats and realleges paragraphs 1 through 33 as though fully set forth herein.

8

35.    By demoting Ms. Alexander, treating her differently from her similarly situated

colleagues, and terminating her employment because she became pregnant and had a

child, Bain engaged in unlawful sex discrimination in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e-2, and Mass. Gen. L. c. 151B §4(1).

36.    As a result of the conduct alleged, Ms. Alexander has suffered damages, including but

not limited to loss of income, loss of employment benefits, loss of professional

opportunities, loss of personal and professional reputation, and attorneys' fees and costs.

**WHEREFORE**, Ms. Alexander prays this Court enter a judgment on Count I above against the

Defendant Bain Capital, LLC and award her compensatory damages (including lost wages and

benefits, and damages for harm to reputation), reasonable attorneys' fees, costs and interest,

punitive damages, and such other relief as the Court deems just and proper.

## COUNT II

### Retaliation and Interference with Protected Rights

37.    Ms. Alexander repeats and realleges paragraphs 1 through 36 as though fully set forth

herein.

38.    Ms. Alexander engaged in protected activity in May 2006 and August 2006 when she

complained of discrimination on the basis of her pregnancy, and when she filed her

Charge of discrimination and retaliation at the MCAD on January 16, 2007.

39.    Bain retaliated against Ms. Alexander and interfered with her protected rights by treating

her differently from her similarly situated colleagues after she complained of

discrimination; by disciplining her after she returned from maternity leave; and by

terminating her after she complained of discrimination and filed a Charge of

discrimination and retaliation at the MCAD.  This conduct constitutes unlawful

retaliation and interference with protected rights in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e-3 and Mass. Gen. L. c. 151B, §§ 4(4) and 4(4A).

40.     As a result of the conduct alleged, Ms. Alexander has suffered damages, including but

not limited to loss of income, loss of employment benefits, loss of professional

opportunities, loss of personal and professional reputation, and attorneys' fees and costs.

**WHEREFORE**, Ms. Alexander prays this Court enter a judgment on Count II above against the

Defendant Bain Capital, LLC and award her compensatory damages (including lost wages and

benefits, and damages for harm to reputation), reasonable attorneys' fees, costs and interest,

punitive damages, and such other relief as the Court deems just and proper.


## COUNT III

### Family and Medical Leave Act

41.     Ms. Alexander realleges and incorporates by reference paragraphs 1 through 40 above.

42.     Defendant Bain Capital, LLC by its actions, violated the Family and Medical Leave Act,

29 U.S.C. § 2601 *et seq*., and interfered with Ms. Alexander's rights under the Act when,

among other things, it failed to restore her to her same or equivalent job with the same

terms and conditions of employment by treating her differently from her colleagues,

placing her on a Performance Improvement Plan, and firing her shortly after she returned

from FMLA leave.  *See* 29 U.S.C. § 2615.

43.     As a direct and proximate result of the above described conduct, Ms. Alexander has

sustained substantial injury, including but not limited to, loss of compensation and

benefits, attorneys' fees and costs.

WHEREFORE, Ms. Alexander requests that this Court enter a judgment on Count III ordering Defendant Bain Capital, LLC to pay to Ms. Alexander the following: compensatory damages including lost compensation and benefits, liquidated damages in an amount equal to compensatory damages, attorneys' fees, costs and interest, and such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a jury trial on all counts so triable.

Respectfully Submitted,
By Her Attorneys

/s/ *Nina Joan Kimball*
Nina Joan Kimball      BBO# 547567
Justine H. Brousseau   BBO# 553776
Kimball Brousseau LLP
One Washington Mall, 14th Floor
Boston, MA  02108
(617) 367-9449
nkimball@kbattorneys.com
jbrousseau@kbattorneys.com

DATED: January 16, 2009

11